## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| JALLEY M. NGUYEN and | ) | CASE NO. 09-34996 |
| JUDY NGOC NGUYEN, | ) | Chapter 7 |
| Debtors | ) | |

_____

| | | |
|---|---|---|
| AMERICAN EXPRESS BANK, FSB, | ) | |
| Plaintiff | ) | |
| vs. | ) | ADV. NO. 09-3092 |
| JALLEY NGUYEN a/k/a | ) | |
| JALLEY M. MGUYEN and | ) | |
| NGOCCHAU T. NGUYEN a/k/a | ) | |
| JUDY NGOC NGUYEN, | ) | |

_____

## MEMORANDUM OPINION

This adversary proceeding comes before the Court on the Motion for Summary Judgment filed by the Plaintiff, American Express, FSB ("American Express"). At issue is whether the debts owed to American Express are nondischargeable under 11 U.S.C. § 523(a)(2)(A). Upon review of the motion, the supporting documents, and the response filed, the Court concludes that summary judgment should be granted in favor of American Express.

## JURISDICTION

Determinations of dischargeability are core proceedings under 28 U.S.C. § 157(b)(2)(I). The Court has jurisdiction over core proceedings under 28 U.S.C. §§ 1334 and 157(a).

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant Jalley Nguyen (hereinafter "Jalley") opened an account (Account 1) with American Express in March of 1998. Defendant Ngocchau T. Nguyen a/k/a Judy Ngoc Nguyen (hereinafter "Ngocchau") opened an account (Account 2) with American Express in September of

2008.  The terms and conditions of the account agreements between the Defendants and American Express called for the payment of reasonable attorney fees and all costs expended by American Express in the collection of the accounts.

Between February 25, 2009 and March 7, 2009, Jalley made seventeen (17) charges totaling $45,942.10 on Account 1.  Jalley made two (2) charges totaling $28,000.00 at Hing Wa Jewelers for items described as "JEWELRY/CLOCK/SILVE," and one (1) charge in the amount of $12,000.00 at Tick Tock Watches & Westminster for item(s) described as ""JEWELRY/WATCH/SILVRWR." On March 2, 2009 Jalley made one (1) payment on Account 1 to in the amount of $17,020.78 and on March 3, 2009, Jalley made one (1) payment in the amount of $30,000.00.  Jalley's bank honored neither of the payments.

Between January 12, 2009 and February 28, 2009, Ngocchau  made eighteen (18) charges on Account 2 totaling $2,925.09, including one (1) charge in the amount of $1,974.23 at "BOSEMER ORANGE."  On February 27, 2009, Ngocchau made one (1) payment to American Express in the amount of $1,926.59, however, like Jalley's payment, this payment was returned as "DECLINED BANK TRANSACTIONS."

On September 29, 2009, the Defendants filed their joint, voluntary Chapter 7 petition. According to the Defendants' Schedule F, "Creditors Holding Unsecured Nonpriority Claims," the Defendants have unsecured, nonpriority debt totaling $252,254.08, and in the Defendants' Schedules I and J, the Defendants have a joint monthly income of $4,561.79, with current monthly expenses totaling $5,755.00.  This negative balance is exclusive of payments required to service any credit card debt.  According to the Defendants' Statement of Financial Affairs, the Defendants earned an annual income of $59,800.00 in 2008 and $80,000.00 in 2007.  On December 23, 2009, American

Express filed this adversary proceeding seeking: (1) a determination that the debt owed to American Express is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), and (2) a money judgment against the Defendants in the amount of $50,212.20, plus interest, attorneys' fees and costs. In their answer, the Defendants admit making several charges upon the credit cards, including purchasing several watches. The Defendants further state that soon after purchasing the watches, they sold the watches to fund a gambling trip in an unsuccessful attempt to win sufficient funds to become current on their debts.

American Express supported its summary judgment motion with the Defendants' answers to interrogatories, responses to requests for admissions, copies of the charge card agreement, copies of the Defendants' tax returns and bank statements, and an affidavit of Louise Turner, which set forth the factual history set out above. While the Defendants filed a response to the summary judgment motion, they did not include any affidavits or other supporting materials to their response.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c), made applicable to bankruptcy proceedings by Bankruptcy Rule 7056, provides that a court shall render summary judgment:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The party moving the Court for summary judgment bears the burden of showing that "there is no genuine issue as to any material fact and that [the moving party] is entitled to judgment as a matter of law." Jones v. Union County, 296 F.3d 417, 423 (6th Cir. 2002). See generally Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party meets that burden, the nonmoving party "must identify specific facts supported by affidavits, or by

depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for

trial." Hall v. Tollett, 128 F.3d 418, 422 (6th Cir. 1997) (emphasis added).  In determining the

existence or nonexistence of a material fact, a court will view the evidence in a light most favorable

to the nonmoving party.  Tennessee Dep't of Mental Health & Mental Retardation v. Paul B., 88

F.3d 1466, 1472 (6th Cir. 1996).  Absent such evidence from the nonmoving party in a motion for

summary judgment, the Court need not comb the entire record to determine if any of the available

evidence could be construed in such a light.  See In re Morris, 260 F.3d 654, 665 (6th Cir. 2001)

(holding that the "trial court no longer has the duty to search the entire record to establish that it is

bereft of a genuine issue of material fact").

## DISCUSSION

Section 523(a)(2)(A) of the Bankruptcy Code provides as follows:

> (a) A discharge under §727, 1141, 1228(a), 1228(b), or 1328(b) of
> this title does not discharge an individual debtor from any debt -
>
> (2) for money, property, services, or an extension, renewal, or
> refinancing of credit, to the extent obtained by -
>
> (A) false pretenses, a false representation, or actual fraud, . . .;

In order to prevail under § 523(a)(2)(A), the creditor must prove that: (1) the debtor obtained money

through a material misrepresentation that, at the time, the debtor knew was false or made with gross

recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably

relied on the false representation; and (4) its reliance was the proximate cause of loss.  In re

Rembert, 141 F.3d 277, 280-81 (6th Cir. 1998); In re Miller, 250 B.R. 294 (Bankr. E.D. Ky. 2000).

In Rembert, the debtor used cash advances on her credit card to fund her gambling habit.

After incurring gambling losses of between $18,000 and $24,000, the debtor continued to obtain

4

cash advances to gamble.   At trial, the debtor "testified that at the time she was obtaining cash advances for gambling, she believed that she would be able to win enough money to repay her credit card debts." Id. at 279.  The bankruptcy court found that the debtor possessed the intent to defraud the credit card companies because the debtor knew she could not repay the debt.  The district court reversed and the Sixth Circuit affirmed the reversal, holding "that the proper inquiry to determine a debtor's fraudulent intent is whether the debtor subjectively intended to repay the debt." Id. at 281. Fraudulent intent cannot be implied simply based on the debtor's inability to repay the debt. Id.  The Sixth Circuit noted that "there was no evidence presented to the bankruptcy court indicating that Rembert used the credit cards without intending to repay the [credit card issuer]." Id.  Given the debtor's testimony regarding her belief that she would win enough to repay the debt and the fact that she took a second mortgage in an attempt to repay the debt, the Circuit concluded that the debtor subjectively intended to repay the debt.  Id. at 282-83.

In this case the only issue is whether the Defendants possessed the requisite fraudulent intent to find the debts non-dischargeable.  The intent to deceive or defraud the creditor is "measured by a subjective standard," and the debtor's intent is ascertained by looking at the totality of the circumstances. Id. at 281-282.  While a view to a debtor's overall financial condition is a necessary part of inferring whether or not the debtor possessed fraudulent intent, the state of a debtor's financial condition should never become a substitute for an actual finding of bad faith.   Id. Moreover, the mere inability to pay the credit card debt at the time it is incurred does not per se establish fraud.  Id.

Thus, for these credit card debts are to be excepted from discharge under § 523(a)(2)(A), American Express must prove by a preponderance of the evidence that the Defendants did not have

the intent to repay the debt when they incurred the charges.  The task of proving a debtor's state of mind at the time a credit card is used is a very difficult one.  Rembert at 282 ("[A] subjective analysis of a debtor's fraudulent intent is extremely difficult to establish. Clearly, debtors have an incentive to make self-serving statements and will rarely admit an intent not to repay."); see also AT & T Universal Card Servs. v. Mercer ( In re Mercer), 246 F.3d 391, 409 (5th Cir. 2001) ("A debtor rarely will admit card-debt is incurred with the intention of not paying it...."). In evaluating a debtor's subjective intent at the time a credit card is used, the Sixth Circuit set forth twelve factors to consider when determining whether a debtor intended to repay the debt.  These factors are: (1) the length of time between the charges made and the filing of bankruptcy; (2) whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made; (3) the number of charges made; (4) the amount of the charges; (5) the financial condition of the debtor at the time the charges were made; (6) whether the charges were above the credit limit of the account; (7) whether the debtor made multiple charges on the same day; (8) whether or not the debtor was employed; (9) the debtor's prospects for employment; (10) the financial sophistication of the debtor; (11) whether there was a sudden change in the debtor's buying habits; and (12) whether the purchases were made for luxuries or necessities.  Id. at 282 citing in Citibank South Dakota, N.A. v. Dougherty (In re Dougherty), 84 B.R. 653, 657 (9th Cir. BAP 1988).

When considering these factors and the totality of circumstances in this case, the Court is left with the firm conviction that the Defendants did not have the intent to repay these debts.  The Court derives this conclusion by mainly looking at the number of charges (35 charges collectively), the timing of the charges (January 12, 2009 and March 7, 2009), the amount of the charges ($48,867.19 collectively), the nature of the charges (purchasing expensive watches for immediate resale), the

Defendants' implausible scheme to repay the charges, the complete absence of any payments on the charges, the Defendants' financial condition when they incurred the charges (insufficient income to service credit card debt and maintain monthly expenses), and the Defendants' financial sophistication (Defendants were both employed, with Jalley working as an engineer and Ngocchau being self employed).  Moreover, the Defendants offered nothing in terms of an affidavit or other documentation to rebut these inferences.  In the absence of anything from the Defendants, the Court concludes that the Defendants possessed the requisite fraudulent intent to find these debts nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).  A separate judgment will be entered in accordance with this memorandum.

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF KENTUCKY

In re:                                                        )
                                                             )
JALLEY M. NGUYEN and                                          )        CASE NO. 09-34996
JUDY NGOC NGUYEN,                                             )        Chapter 7
                              Debtors                         )
_____

AMERICAN EXPRESS BANK, FSB,                                   )
                              Plaintiff                       )
vs.                                                          )        ADV. NO. 09-03092
JALLEY NGUYEN a/k/a                                           )
JALLEY M. MGUYEN and                                          )
NGOCCHAU T. NGUYEN a/k/a                                      )
JUDY NGOC NGUYEN,                                             )
_____

### JUDGMENT

Pursuant to the Court's Memorandum entered this same date and incorporated herein by reference, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that judgment is entered in favor of American Express Bank FSB and against the Defendant Jalley Nguyen in the amount of $46,052.20 and against the Defendant Ngocchau T. Nguyen in the amount of $4,160.00, plus attorney fees in the amount of $1,250.00 and costs in the amount of $250.00, for a total amount of $51,712.20, and said amounts are nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).